# CASES ARGUED AND DECIDED

IN THE

# Supreme Court of Georgia.

## MARCH TERM, 1893.

THOMAS *v.* THE STATE.

1. The act of Nov. 26th, 1890, amending the fence laws of the State and repealing section 1449 of the code, is a general law and is constitutional. A part of its effect is to apply the prior laws on the subject of impounding stock to the new conditions established by the amending act in all counties in which those conditions prevailed when that act was passed. One of these being the county of Monroe, live stock running at large in that county on the premises of any person other than the owner, in the month of October, 1891, could be lawfully taken up and impounded.

2. Inasmuch as the facts recited in the following instructions to the jury would not only negative the offence of murder on the part of David Thomas, the accused, but would equally negative the offence of manslaughter, it was error to enumerate these facts and restrict them to the element of murder alone, without elsewhere in the charge informing the jury with equal explicitness that they were alike applicable to the element of manslaughter,—in other words, that if these facts were found to exist, the accused would be guilty of no crime whatever. The instructions referred to were as follows: " If you believe from the evidence that the Thomases went to the house of Gossett to break the pound and did nothing more, went there with the purpose of repossessing themselves of the property peaceably, to negotiate terms by which they could regain possession of the property without any violence; then if Gossett drew a gun, or if Gossett was manifestly intending or endeavoring to kill or to commit a felony upon the person of John Thomas, then John Thomas would have the right to defend himself by using such force as would prevent such an injury, and if a struggle ensued to prevent such an injury, and the gun fired accidentally, or if it was discharged without any fault or intention on the part

v 92-1

of any person engaged in the struggle to discharge the gun, then, although Dave Thomas may have joined in the struggle, you would not be authorized to convict him of the crime of murder." On account of this error alone the court erred in not granting a new trial, the other grounds of the motion for a new trial not em-- bracing any cause for reversing the judgment.

July 26, 1893.

Indictment for murder. Before Judge BOYNTON. Monroe superior court. August term, 1892.

David Thomas was convicted of voluntary manslaughter, and he excepted to the overruling of his motion for a new trial. Among the grounds of the motion was an assignment of error upon the refusal to grant a continuance on account of serious illness of A. D. Hammond,. leading counsel for the defendant. The indictment was found at the August adjourned term (held in November), 1891. The motion to continue was overruled on the 25th, and the trial set for the 30th of that month,. on which day the motion was renewed and again overruled. On this motion the showing provided by section 3525 of the code was made, and the State made a counter-showing. It appeared, in brief, that Mr. Hammond had been employed by defendant and his brothers before the commitment trial, in good faith, not for the purpose of continuing the case, and without knowledge that he had for some time been in bad health, he being the first attorney consulted, and they having acted on his advice,. paid the cash portion of his fee and arranged the balance, believing that he was able to represent them. He attended part of the commitment trial (it having extended over a week by continuances), going to and from the same in a carriage, and while present sitting in his chair and taking no part in the examination of witnesses or the argument, but advising in the conduct of the case. His physician testified, that he was an invalid, having been sick a long time; that he was sick at the time of his employment, and had been for some time before;

that he was sick at the time of the commitment trial, and attended the same against affiant's opinion; but that he was improving, and if he continued to improve, he would probably be well enough to try cases and attend to any professional business in court at the next February term. He had obtained leave of absence from court as to civil, but not as to criminal business.

The killing took place on the premises of Gossett, who had impounded three mules belonging to Mrs. Thomas, which were running in his cotton-field. On the same afternoon that this was done (according to his testimony and that of his wife and daughters), he sent a message to the Thomas residence (which was three or four hundred yards from his own), to inform the Thomases that the animals had been taken up, with request to send and get them on payment of damages at fifty cents apiece. In the evening or just before nightfall came John and Jabez Thomas and took away two of the mules, as the Gossetts testified, forcibly and without reference to the damages claimed, although forbidden to take them. They further testified that John at this visit used profane language and ran one of the mules over one of Gossett's daughters who had grasped the bridle. Shortly afterwards John and Jabez returned, accompanied by their brother David (who had a pistol) and a younger brother; the defence contending that their object was to retake the third mule peaceably, and to pay or arrange for the payment of the damages claimed. They were met by Gossett with his gun in his hands, and by his wife and two daughters. A quarrel and struggle ensued, in which the gun was discharged, killing one of the girls. The defence contended that this discharge was accidental; while the testimony of the Gossetts tended to show, that after Gossett had been seized and thrown down by John Thomas, and while he was being held down and beaten, still holding

to the gun, David Thomas tried to fire on him with the pistol, and succeeding only in snapping it, threw it down, seized the gun, turned the muzzle towards Gossett's head and pulled the trigger, discharging the load into the breast of the girl. Upon this and all the other material circumstances and the acts of the parties to the conflict, the evidence was directly conflicting. The Thomas boys were nephews of Mrs. Gossett, and the evidence indicates that ill feeling had existed between them and Gossett for some time.

The motion for a new trial alleges that the court erred in refusing to charge the jury thus: "The act approved September 29th, 1881, establishing what is known as the fence law, is a local law applicable to Monroe county, and there being a general law on the subject of fence enacted in 1872, the local law applicable to Monroe county is null and void. The act approved Nov. 26th, 1890, makes the land line of any lot, parcel or tract of land a lawful fence in counties that have inoperative local laws on the subject; but this act of 1890 does not provide for the taking up or impounding of animals. Therefore, I charge you that on the 8th day of October, 1891, no law existed in this county which permitted Gossett to take up and impound the stock of Mrs. Thomas or Mr. Thomas. His remedy would have been a suit for damages, if any damage was done by the stock.

"If you believe from the evidence that Gossett had a gun in his hand and attempted to use it on John Thomas, or if the circumstances under which he had and held it were such as to justify a reasonable man to believe that Gossett was about to use the gun on John Thomas, and if you believe that John Thomas, acting under such fear, seized Gossett and threw him to the ground to prevent Gossett from using the gun on him, and if you believe from the evidence that while Gossett was down, the gun was fired in an accidental way, that is, if it was

not purposely and intentionally fired by some one, then I charge you that you could not find the defendant guilty of murder or any grade of manslaughter."

Other assignments of error are upon the following instructions to the jury, as well as upon that quoted in the second head-note : " It is insisted by the defendant that if the Thomases went to the house of Gossett, they went there for the purpose of obtaining possession of a mule which Mr. Gossett had impounded in his possession, or that he had in his possession a mule which they had a right to ; and defendant insists that it would be no violation for them to go there and possess themselves of the mule, because they insist that there was, at the time, no law of force in the county of Monroe which would authorize Gossett to impound and retain possession of the mules.

" At the time of the alleged killing there was a law that was applicable to the county of Monroe, which authorized a person who found stock running upon his premises, to impound and retain them until the damages which the stock was alleged to have committed should be paid, or until the party owning the stock should give bond to replevy the property to pay such damages as might be assessed against him.

" If the gun was fired by the defendant involuntarily, fired in the commission or in the prosecution of a riotous intent, you would be authorized to convict.

" Before the jury would be authorized to return a verdict of acquittal on the ground of misfortune or accident, it must appear to the satisfaction of the jury that there was no evil design on the part of the person committing the homicide, no evil intention, or that there was no culpable neglect."

BERNER & BLOODWORTH and HALL & HAMMOND, for plaintiff in error.   STEWART & DANIEL, *contra*.

SIMMONS, Justice.

1. The act approved November 26th, 1890, amending the fence laws of the State and repealing section 1449 of the code (Acts of 1890–91, vol. 1, p. 69), is a general law, and is constitutional. It operates generally throughout the whole State. Every county in the State may avail itself of the provisions of this act, and of the one of which it is amendatory. Whenever and wherever an election is held and fences are abolished by a vote of the people, this act applies. No county or section of the State is excluded from its operation. All that is necessary to put it in force in any county is to comply with the requirements of the act of which it is amendatory. It is very similar in its provisions to the local option act which has been held by this court to be a general law and constitutional. *Crabb* v. *State*, 88 *Ga.* 584. Being an amendment to the original act, it takes the place of the section in the code repealed by it, and becomes a part of that act. Its provisions went into effect immediately in all those counties which had attempted to abolish fences but had not succeeded, on account of the want of legislative power to pass special acts for particular counties. The same provisions are likewise applied to other counties when they hold elections and abolish fences by popular vote. When this is done according to the requirements of the original act, the boundary lines of each lot or tract of land will be a lawful fence. In the same manner, the act went into immediate operation in all those counties which had attempted to abolish fences by special legislative enactment, and the provisions of the original act in regard to impounding stock were applied to the new condition established by the amending act in all those counties ; and the same provision will apply in all counties which hereafter adopt the act by popular vote. Monroe county being one of those which had attempted to abolish fences

by a special act, the amending act went into effect immediately in that county, and live stock running at large in the county on the premises of any person other than the owner, in the month of October, 1891, could be lawfully taken up and impounded. There was, therefore, no error in refusing the request to charge on this subject made by counsel for the accused.

2. We think the court erred in the charge set out in the second head-note of this opinion. We are of the opinion that if the jury should believe the facts recited in this charge, they would be authorized and required to find the defendant not guilty. This charge instructs them that they could not, on the hypothesis therein stated, find him guilty of murder. It should have gone further and negatived the idea of manslaughter as well as murder, and it was error to restrict the jury to the element of murder alone, as they might have inferred from this charge that the court intended to do. Limiting them to the element of murder might have been understood as equivalent to saying that they might find the defendant guilty of manslaughter upon the facts recited. The court ought to have instructed the jury that if these facts were true, they should acquit the defendant. We think this error requires the grant of a new trial. Speaking for myself, I think the refusal of the court to continue the case on account of the sickness of the leading counsel for the accused, was also error; but in this the other members of the court do not concur. I think, when a party makes a motion for a continuance on account of the absence of his leading counsel, and makes the proof required by section 3525 of the code, the judge has no discretion in the matter,— no more than he has when proof is made that a party is providentially prevented from attending the trial of the cause. Section 3524 of the code declares, that if either party shall be providentially prevented from at-

tending at the trial of any cause, " such cause shall be continued," when the proper showing is made.   Section 3525 provides, that where certain facts appear, the illness or absence of counsel from providential cause " shall be a sufficient ground for continuance."   My brethren differ from me in this view, and think continuances should be controlled by section 3531, which declares that " all applications for continuances are addressed to the sound legal discretion of the court, and if not expressly provided for, shall be granted or refused as the ends of justice may require," and that under the special facts of this case, the court did not abuse its discretion in refusing the continuance.

The other grounds of the motion for a new trial do not embrace any cause for reversing the judgment.

· *Judgment reversed*