## 35842. BOARD OF COMMISSIONERS OF TAYLOR COUNTY et al. v. COOPER et al.
## 35843. STRICKLAND et al. v. COOPER et al.

HILL, Justice.

In 1975, the General Assembly enacted a one percent local option sales tax which could only be instituted following a local referendum. On November 2, 1976, the voters of Taylor County, Georgia, approved the county-wide levy of a one percent sales tax. In 1979 the 1975 Act was declared unconstitutional. *City Council of Augusta v. Mangelly,* 243 Ga. 358 (254 SE2d 315) (1979).

The General Assembly immediately passed the 1979 Local Option Sales Tax Act, Ga. L. 1979, p. 446. This Act provides, subject to certain limitations, for the automatic levy of the tax based on referendums held before the 1975 Act was declared unconstitutional. In October, 1979, four residents of Taylor County (here-inafter referred to as the taxpayers) filed an action seeking a declaratory judgment that the 1979 Act is unconstitutional, and injunctive relief to restrain the local governing authorities and the state revenue commissioner from levying and collecting the tax.[1] The taxpayers' attacks on the statute were that:

(1) The Act authorized a tax and county action which

---

[1]Two of the plaintiffs live in the City of Reynolds, one lives in the City of Butler, and one lives in the unincorporated area of the county. The named defendants were the Board of Commissioners of Taylor County, the

makes it possible for a county to give county tax funds to municipalities, which is not permitted under our Constitution.

(2) The Act and its critical provisions were not authorized by the provision of the Constitution upon which the General Assembly bottomed its authority.

(3) The Act and its critical provisions constituted an unlawful delegation of legislative power.

(4) The Act and its critical provisions denied due process and equal protection.

(5) The Act violated the uniformity provision of the Georgia Constitution.[2] Additionally, motions to intervene filed by the boards of commissioners of Toombs, Lee and Brantley Counties were granted. Intervenors alleged that since their counties had not held a prior referendum which would satisfy the 1979 Act and would have to hold one before they could levy the tax, the 1979 Act violated the equal protection clauses of the State and Federal Constitutions. Ga. Const. Art. I, Sec. II, Par. III (Code Ann. § 2-203); U. S. Const. Am. 14. They also alleged that the Act violated equal protection in that by permitting local option sales taxes, as opposed to a state-wide sales tax, the Act requires residents of non-trade rural counties who shop at commercial centers to support the services of commercial urban counties.

The trial court granted relief to the plaintiffs and intervenors, holding that the Act is unconstitutional for three reasons: "[I]t authorizes a county . . . to give county

mayors and councils of Butler and Reynolds, and W. E. Strickland, individually and in his official capacity as Commissioner of the State Department of Revenue (hereinafter collectively referred to as the governments).

[2]The taxpayers attacked both section 1 and section 2 of the Act, which contain identical provisions. Section 1, codified at § 92-3447a.1, was an interim provision effective April 1, 1979 to January 1, 1980. Section 2, codified at Ch. 91A-46 as part of a general recodification of our revenue laws, became effective January 1, 1980. The Act currently contains a provision repealing section 2 as of July 1, 1981. Since section 2 is now in effect, we will confine our references to the provisions of § 91A-4601 et seq.

tax funds to municipalities which the Supreme Court says may not be done." It is "not authorized by Article IX, Section IV, Paragraph II of the Constitution of the State of Georgia (Code Ann. § 2-6102) . . . nor is it authorized by any other provision of the Constitution." "[I]t is an unlawful delegation of the legislative power of the State. . ." The trial court did not reach plaintiffs' other contentions nor did it rule on the intervenors' complaints.

1. (a) Because several of the taxpayers' arguments emanate from it, we deal first with the argument that the power to tax cannot be exercised in the absence of specific authorization. In asserting this, the taxpayers rely on *City Council of Augusta v. Mangelly,* 243 Ga. 358, 361, supra. At issue in *Mangelly* was not whether a county tax was authorized but whether the distribution of the proceeds was prohibited. These are two separate questions. See *Concerned School Patrons of Ware County v. Ware County Board of Ed.,* 245 Ga. 202 (1980). As for the first question, we noted in *Blackmon v. Golia,* 231 Ga. 381 (1) (202 SE2d 186) (1973), that the power to tax is inherent in the General Assembly, subject only to limitations in the Constitution. Thus the General Assembly does not need constitutional authorization to levy a tax or to authorize the levy of a tax by a county. As for the second question, the purposes for which state and county tax revenues may be expended are limited by the Constitution. See, e.g., Code Ann. §§ 2-4701, 2-4703, 2-6201; *Wright v. Absalom,* 224 Ga. 6, 8 (159 SE2d 413) (1968). Only the latter principle was at issue in *Mangelly.* The statement in that case, 243 Ga. at 361, that "[T]he Constitution requires that the General Assembly not tax except where express con-stitutional authorization has been granted" combines the two separate questions stated above and should not be read literally. Thus we agree with the governments: The first issue is not whether this tax is authorized by the Constitution but whether it is prohibited. *Blackmon v. Golia,* supra. The taxpayers have pointed to no provision of the Constitution prohibiting a local option sales tax levied jointly by counties and cities.

(b) In addition to arguing that the tax is valid because it is not prohibited by the Constitution, the governments assert that if specific constitutional authorization for the

tax were required, Code Ann. § 2-6102, supra (hereinafter referred to as Amendment 19),[3] provides it. Amendment 19 provides: "In addition to and supplementary of any powers now conferred upon and possessed by any county, municipality, or any combination thereof, any county, any municipality and any combination of any such political subdivisions may exercise the following powers and provide the following services. . ." A list of fifteen powers and services follows. Amendment 19 also provides: "Any county, municipality, and any combination thereof, or the General Assembly, may provide for the creation of special districts within which the above services, or any portion thereof, shall be provided, and to determine and fix reasonable charges and fees for such services. In addition, the powers of taxation and assessment may be exercised by any county, municipality or any combination thereof, or within any such district, for the above powers and in order to provide such services."[4]

Code Ann. § 91A-4601 provides that "Pursuant to the authority contained [in Amendment 19], there is hereby created within this State 159 special districts. The geographical boundary of each county shall correspond with and shall be coterminous with the geographical boundary of one of the 159 special districts."[5] The taxpayers argue that Amendment 19 does not authorize the levy of a tax in the special districts created by Code Ann. § 91A-4601 because the purpose of Amendment 19 was to authorize the provision of services while the

---

[3]This provision of the Constitution is known as Amendment 19 because it was given that number on the ballot when it was adopted at the general election in 1972. See Ga. L. 1973, p. 1759.

[4]Taxpayers contend that the phrases "or any combination thereof" were intended to apply to consolidated governments such as Columbus-Muscogee County. Such construction would preclude intercounty cooperation which it is conceded that Amendment 19 was intended to allow.

[5]The taxpayers argue that under Amendment 19, the special districts cannot be coterminous with counties. We

purpose of Code Ann. § 91A-4601 et seq. is to provide ad valorem tax relief. Taxpayers urge that the local option sales tax will be "substituted" for ad valorem taxes. This argument seeks to establish a direct connection between the local option sales tax and ad valorem tax relief which simply does not exist.

Amendment 19 authorizes the levy of taxes in special districts to provide the authorized services. Code Ann. § 91A-4608 allocates the proceeds of the tax at issue to assist "in funding all or any portion of those services which are to be provided . . . in accordance with [Amendment 19]." The tax is to fund the services. As a consequence, these same services need not be funded from ad valorem taxes. But implementation of a local option sales tax under Code Ann. § 91A-4601 et seq. may or may not result in a reduction of ad valorem taxes in a given city or county. See Code Ann. § 91A-4610 (a). The fact that ad valorem tax relief might be the result of services being funded by the local sales tax does not mandate a determination that the local option sales taxes will not be used for specified services or that the tax is not authorized by Amendment 19.

Amendment 19 authorizes counties to exercise the power of taxation for the specified services; it authorizes municipalities to do the same; and it authorizes a combination thereof to do likewise. In addition to the absence of any constitutional prohibition, we find authorization for this special district tax in Amendment 19.

To summarize, we hold that the tax authorized by Code Ann. § 91A-4601 et seq. is constitutional whether viewed as a joint county-city tax which the General Assembly could and did authorize in the exercise of the state's inherent power to tax, or viewed as a special

---

find nothing in Amendment 19 that effects such a limitation. Taxpayers concede that the special district could be intercounty as well as intracounty. Agreeing that the district could be intercounty as well as intracounty, we find no reason the district cannot be coterminous with the county.

district tax authorized by Amendment 19.

2. The taxpayers also argue that the 1979 Act authorizes counties to give county tax funds to cities in direct contravention of *City Council of Augusta v. Mangelly,* supra, because of the so-called "local negotiation" feature of the Act, and because if county and city ad valorem taxes are both reduced as a result of the receipt of tax revenues under the sales tax, city taxpayers will receive a greater benefit than county taxpayers.

The phrase "local negotiation" refers to the procedure for distribution of the proceeds established by Code Ann. § 91A-4608, which provides that the proceeds "shall be distributed to the governing authority of each qualified municipality within the special district and to the governing authority of the county whose geographical boundary is coterminous with that of the special district ... Such distribution shall be in accordance with the provisions of a certificate which shall be executed in behalf of each respective governing authority . . . and which shall specify by percentage that portion of the remaining proceeds of the tax available for distribution which each such political subdivision shall receive."

This statutory scheme does not violate *Mangelly,* supra; the tax here is not a county tax being partially distributed to cities; it is a joint city-county tax or a special district tax.[6] As a special district tax, it is not a county tax being distributed to cities, and thus local negotiation does not violate Amendment 19.

Likewise, we find no equal protection or due process violation on the basis that some areas of the district or

---

[6]Although we agreed with the governments in Division 1(a), supra, that there is no constitutional prohibition on the levy of a joint county-city tax, in view of the fact that Code Ann. § 91A-4601 et seq., specifically provides that it was adopted pursuant to Amendment 19 and our conclusion that it is constitutional when the tax authorized is considered a special district tax, we will not decide the constitutionality of other provisions of Code Ann. § 91A-4601 et seq., such as the distribution of revenue provisions, in the absence of Amendment 19.

some taxpayers in the district may receive a greater benefit than others. *McLennan v. Aldredge,* 223 Ga. 879 (5) (159 SE2d 682) (1968); *Decatur Tax Payers League, Inc. v. Adams,* 236 Ga. 871, 873 (226 SE2d 69) (1976). Indeed, this is no doubt true of most if not all taxes and is totally distinct from the vice condemned in *Martin v. Ellis,* 242 Ga. 340 (249 SE2d 23) (1978). There the differential reduction of ad valorem taxes resulted in some county taxpayers paying taxes for the same services on the basis of different millage rates, i.e., a non-uniform *county* tax. Here, in contrast, there is no lack of uniformity: the special district sales tax will be uniform throughout the special district, the county ad valorem taxes will be uniform throughout the county, and each municipality's ad valorem taxes will be uniform throughout that municipality. As we reiterated in *Martin v. Ellis,* supra, 242 Ga. 344, "[I]nequality among taxpayers in the same taxing authority with respect to the distribution of benefits is not unconstitutional. . ."

3. The taxpayers also argue that the local negotiation feature of the Act is an unlawful delegation of legislative authority. They rely in part on *Phinizy v. Eve,* 108 Ga. 360, 361 (33 SE 1007) (1899), for the proposition that " . . . the power to tax is exclusively of a legislative character. . ." However, even prior to the home rule amendments, local governing authorities exercised some legislative and taxing authority. Moreover, the local negotiation feature does not delegate the power to tax as such; it merely allows the taxing authority to distribute the proceeds within its boundaries and this is unobjectionable.[7] Furthermore, we find that local negotiation of the distribution of the proceeds is authorized by the last paragraph of Amendment 19.

Taxpayers also argue that Code Ann. § 91A-4601 et seq., was incomplete when it left the hands of the legislature by virtue of the local negotiation provision, and thus constitutes an unconstitutional delegation of legislative authority prohibited by this court's ruling in

---

[7]It is, of course, beyond dispute that a local option tax is not per se an impermissible delegation of legislative

*Holcombe v. Ga. Milk Producers Confederation,* 188 Ga. 358 (4) (3 SE2d 705) (1939). We cannot agree. The provision complained of in *Holcombe* was the local option feature of the Act at issue, and it withstood attack. Taxpayers have cited no case regarding a provision analogous to the local negotiation feature and we are aware of none. In our view Code Ann. § 91A-4601 et seq., does not impermissibly delegate legislative authority: it creates certain special districts; it authorizes imposition of a local option sales tax by those districts; it fixes the rate of the tax; it determines which transactions the tax will be levied upon; it provides that the proceeds be spent for specified purposes, etc.[8] With these provisions, it is not mandatory under delegation principles that a Special District Tax Act also direct the division of funds within the authority levying the tax.

4. Taxpayers also attack Code Ann. § 91A-4603 as unauthorized by Amendment 19 and as a violation of equal protection. Code Ann. § 91A-4603 provides "Effective January 1, 1980, the joint tax provided for in Code section 91A-4602 shall be levied in each special district in which, prior to January 1, 1980, a joint county and municipal sales and use tax was levied pursuant to Section 26A of [the 1975 Act] or, if prior to said date, a referendum election had authorized the levying of such a tax within the special district." Taxpayers argue that because the 1975 Act was void, elections held thereunder should be treated as void. Those elections existed as facts which the General Assembly could recognize. See *Thomas v. State,* 92 Ga. 1 (18 SE 44) (1893).

We do not find that this "grandfathering" of areas which had already voted to levy a 1% sales tax is constitutionally impermissible. The burden was on the

authority. *Coleman v. Board of Education,* 131 Ga. 643 (6) (63 SE 41) (1908).

[8]We do not intimate that it is necessary that the Act include all of these provisions; we only note that it does. Nor do we intimate that criteria for local determination would be inappropriate in similar legislation not founded on Amendment 19.

taxpayers to show that the challenged provision was unconstitutional. The taxpayers do not argue that Amendment 19 in any way requires or prohibits referendums although they do assert that the principles of equal protection prohibit this particular provision. But the principles of equal protection require only that this classification not be irrational. *Ingalls Iron Works Co. v. Chilivis,* 237 Ga. 479, 482-483 (228 SE2d 866) (1976); *Great Northern Nekoosa Corp. v. Board of Tax Assessors,* 244 Ga. 624 (1979).

We hold that distinguishing between counties which had already voted to impose a 1% retail sales tax and those which had not was reasonable, and in fact in all likelihood was calculated to avoid any hiatus between the 1975 and 1979 Acts and to reduce the unnecessary expenditure of tax revenues by obviating the necessity for new referendums in a number of counties. See *Thomas v. State,* supra. Taxpayers' argument that Code Ann. § 91A-4601 et seq. is an attempt to "rehabilitate" the 1975 Act seems to us to acknowledge the similarity between the two Acts and to concede the rationality of this grandfathering provision.

No negative implication should be drawn if Code Ann. § 91A-4601 et seq. is viewed as an attempt to constitutionally reimpose the tax sought to be imposed by the 1975 Act declared invalid by this court. As was stated in *Chanin v. Bibb County,* 234 Ga. 282, 289 (216 SE2d 250) (1975), concerning a different Act: "Moreover, before passing the 1974 Act, the legislature had enacted a very similar statute, which in *Golia* we ruled unconstitutional because non-uniform in certain respects. Plainly, the legislature was trying once more to impose the tax here considered, and we need not necessarily frustrate this intent where such a result is avoidable; indeed, we should not. 'We should go at a snail's gait in declaring legislative enactments, and especially tax Acts, upon which the very life of the state depends, unconstitutional and void.' *Wright v. Hirsch,* 155 Ga. 229, 233 (116 SE 795)."

5. In regard to the three intervening counties, the state argues that they lack standing to challenge a state statute on state constitutional grounds. See *Ellington Co. v. City of Macon,* 177 Ga. 541 (1B) (170 SE 813) (1933).

Without deciding this issue, we find that Code Ann. § 91A-4601 et seq. withstands the intervenors' arguments. We have already disposed of the argument that the grandfathering provision of Code Ann. § 91A-4603 violates equal protection because it obviates the necessity for referendums in those counties which had passed a referendum under the 1975 Act before it was declared unconstitutional. See Division 4, supra.

We discern no equal protection violation in the fact, virtually a definition, that urban centers generate more revenue from a sales tax than rural areas do. The underlying objection is that the districts established by the Act are an irrational classification. We cannot agree. The districts are drawn on county lines which we do not find to be an irrational classification, and the burden and benefits of the tax are distributed throughout the same areas. These classifications do not offend the principles of equal protection. *Ingalls Iron Works Co. v. Chilivis*, supra. *Richmond County v. Richmond County Bus. Assn.*, 228 Ga. 281 (185 SE2d 399) (1971), is inapposite; that case was decided prior to the adoption of Amendment 19 and the tax district in issue there was not based on that amendment.

In conclusion, we hold that the 1979 Local Option Sales and Use Tax Act, Ga. L. 1979, p. 446, Code Ann. § 91A-4601 et seq., is not unconstitutional for any reason asserted by the taxpayers or by the intervenors.

*Judgment reversed. All the Justices concur.*

ARGUED JANUARY 14, 1980 — DECIDED
FEBRUARY 5, 1980 — REHEARING DENIED
FEBRUARY 19, 1980.

*W. Thomas Griffith, Alex Davis,* for appellants (Case No. 35842).

*Arthur K. Bolton, Attorney General, James C. Pratt, Assistant Attorney General,* for appellants (Case No. 35843).

*H. H. Perry, Jr.,* amicus curiae.

*Denmark Groover, Jr., Garland T. Byrd, Charles W. Byrd, Ben P. Jackson, Jr., Arthur K. Bolton, Attorney*

General, *James C. Pratt, Assistant Attorney General,* for appellees (Case No. 35842).

*Denmark Groover, Jr., Alex Davis, Garland T. Byrd, Ben P. Jackson, Jr., W. Thomas Griffith,* for appellees (Case No. 35843).