## S92A0550. GWINNETT COUNTY et al. v. BOLIN.
(414 SE2d 225)

WELTNER, Presiding Justice.

A taxpayer filed a complaint alleging that a special election was

---

68

improper because the county board of registrations and elections had failed to comply with statutory procedures concerning the issuance of a call for the election, and had failed to enter an appropriate resolution upon its minutes.[1]

1. The circumstances of the case are:

(a) The county commissioners voted to conduct a referendum concerning the imposition of a special sales tax.[2]

(b) Given the time and circumstances of that action, the only lawful date for the holding of the election was November 5, 1991.[3]

(c) Prior to the date of the commissioners' action, the board understood that commissioners likely would order the holding of the election, and authorized the supervisor to issue the appropriate call in that event.[4]

---

[1] OCGA § 48-8-111 (b) provides, in part:

Upon receipt of the resolution or ordinance, the election superintendent shall issue the call for an election for the purpose of submitting the question of the imposition of the tax to the voters of the county. The election superintendent shall set the date of the election for a day not less than 30 nor more than 45 days after the date of the issuance of the call. . . .

The county board of registrations and elections is the "election superintendent" for this county pursuant to OCGA § 21-2-40 (a):

The General Assembly may by local Act create a board of elections in any county of this state and empower the board with the powers and duties of the election superintendent relating to the conduct of primaries and elections.

See Ga. L. 1988, p. 4296 et seq., amended by Ga. L. 1990, p. 5022 et seq.

[2] When the county commission called for the election, the board of registrations and elections had no discretion as to the holding of the election.

Each superintendent within his county shall exercise the powers granted to him by this chapter and shall perform all the duties imposed upon him by this chapter, which shall include the following: . . . (3) To prepare and publish, in the manner provided by this chapter, all notices and advertisements, in connection with the conduct of elections, which may be required by law, and to transmit immediately to the Secretary of State a copy of any publication in which a call for a special primary, election, or runoff is issued. . . . [OCGA § 21-2-70 (3).]

[3] The resolution adopted by the commissioners provided for the tax to begin on April 1, 1992. The November date for the election was necessary to accomplish this, in accordance with (a) OCGA § 48-8-112 (a), which provides:

If the imposition of the tax is approved at the special election, the tax shall be imposed on the first day of the next succeeding calendar quarter which begins more than 80 days after the date of the election at which the tax was approved by the voters[;]

and (b) OCGA § 21-2-540 (c) (1), which provides:

Notwithstanding any other provision of law to the contrary, a special election to present a question to the voters shall be held only on one of the following dates which is at least 29 days after the date of the call for the special election:

(A) In odd-numbered years any such special election shall only be held on:

(i) The third Tuesday in March;

(ii) The third Tuesday in June;

(iii) The third Tuesday in September; or

(iv) The Tuesday after the first Monday in November; . . .

[4] The board had authority to direct that the elections supervisor transmit the call for publication. See OCGA § 21-2-70.

(d) The board did not meet between the time that the commissioners authorized the election and the time that its supervisor transmitted the call for the election.

2. The trial court voided the special election, and enjoined collection of the tax, on the following ground:

> Since the Board did not at any time between October 1, 1991, and October 6, 1991, act by resolution entered [in] its minutes to cause an election to be held, the election of November 5, 1991, was never called and is, therefore, a nullity.

3. (a) The election was not void. There was no failure to exercise any discretionary act on the part of the board of elections, or of its supervisor. The resolution of the county commissioners made it certain that the election would be held on November 5, 1991. The issuance of the call by the supervisor was a perfunctory act, and one made according to a valid prior authorization.

(b) The failure on the part of a public officer to perform an incidental function that is purely mechanistic should not invalidate an expression of the will of the people that is regular in other respects.

> "Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure, first, to the voter a free, untrammeled vote; and secondly, a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. But these rules are only means. The end is the freedom and purity of the election. To hold these rules all mandatory, and essential to a vital election, is to subordinate substance to form, the end to the means. . . ." [Cit.] [*Coleman v. Bd. of Education*, 131 Ga. 643, 655-656 (63 SE 41) (1908).]

The judgment of the trial court must be reversed.[5]
*Judgment reversed. All the Justices concur.*

DECIDED MARCH 18, 1992.

*Davis, Gregory & Christy, Hardy Gregory, Jr., Richard A.*

---

[5] Some of the briefs complain that the delay in imposition of the tax has resulted in a substantial loss of revenue to the county. We note that a strict compliance with all statutory procedures (specifically with OCGA § 48-8-111) would have precluded, at the least, the basis for the injunction issued by the trial court.

*Carothers, Jonathan A. Weintraub, Sharon J. Strange Stepler,* for appellants.

*Timothy Williams,* for appellee.

*Michael J. Bowers, Attorney General, David A. Runnion, Daniel M. Formby, Senior Assistant Attorneys General, Alston & Bird, G. Conley Ingram, Donna P. Bergeson, Matthew H. Triggs, T. Michael Tennant,* amici curiae.