A01A1435. TURPEN et al. v. RABUN COUNTY BOARD OF COMMISSIONERS et al.
(554 SE2d 727)

RUFFIN, Judge.

This case involves the thorniest of issues confronting local government. It is before us a second time and arises out of a citizens' suit against the Rabun County Board of Commissioners and the Rabun County Hospital Authority ("the defendants").

A group of Rabun County residents ("the citizens") sued the defendants, seeking, among other things, a declaration that the defendants' impending acquisition of a nonprofit hospital was void for failure to comply with the Hospital Acquisition Act ("the Act").[1] The trial court erroneously concluded that the Act did not apply, and the citizens appealed. Another panel of this Court reversed, finding that the defendants' noncompliance with the Act's provisions rendered the acquisition "null and void."[2] Although the panel remanded the case to the trial court for an appropriate remedy, it noted that "[f]rom a practical standpoint, it may be impossible to undo the [acquisition]," which had been finalized.[3]

Following remand, the citizens moved to enjoin the defendants from selling or making payments on any revenue bonds relating to the hospital acquisition. The trial court denied their motion, and the citizens filed this appeal. For reasons that follow, we affirm.

Although confident in our result, we do not approach this case with the arrogance of certainty. Nor do we consider these issues with cat-like quickness, but with the circumspection and reflection that constantly remind us of that delicate and indelible balance between the judiciary and local government.

---

[1] OCGA § 31-7-400 et seq. See also *Turpen v. Rabun County Bd. of Commrs.*, 245 Ga. App. 190, 192 (1) (537 SE2d 435) (2000) (physical precedent only).

[2] Id. at 197 (5). See also OCGA § 31-7-412 (a).

[3] *Turpen*, supra.

The principal facts underlying the citizens' suit are outlined in this Court's prior decision.[4] On April 2, 1999, Rabun County contracted to purchase 7.68 acres of land, buildings, and equipment that included two hospitals ("the facility") from The Woodlands Foundation, Inc., a nonprofit corporation.[5] In a separate agreement, the County, through the Hospital Authority, agreed to lease and operate the facility until the sale closed.[6] On May 8, 1999, the citizens filed this suit, claiming that the purchase/lease transaction violated the Hospital Acquisition Act and constituted a waste of county tax dollars.[7] In June 1999, the trial court preliminarily enjoined the defendants from acquiring the facility because they had not followed Hospital Acquisition Act procedures and the purchase contract did not adequately address financing.

The defendants subsequently moved to dissolve the injunction, arguing that they had addressed all concerns raised by the trial court. In a separate civil action, the defendants also sought validation of the revenue bonds or "certificates" necessary to acquire the facility. According to the validation petition, the Hospital Authority proposed issuing $4,500,000 in revenue certificates, which would be repaid using revenue generated by the facility. As additional security for payment of the certificates, the defendants agreed that, in exchange for use of the facility, the County would "pay on behalf of the [Hospital] Authority a sum sufficient to enable the Authority to pay the principal of and interest on the . . . Certificates." The County further agreed to levy an annual tax on all taxable property within Rabun County so that it could "make the payments required of it."

The trial court held a joint hearing on both the bond validation and the defendants' motion to dissolve the preliminary injunction in the citizens' suit. Following the hearing, the trial court lifted the preliminary injunction and permitted the hospital acquisition to proceed.[8] It also signed the validation order relating to the revenue bonds.[9]

The citizens appealed the trial court's order dissolving the preliminary injunction.[10] They also filed a notice of appeal in the bond validation proceeding, in which they had intervened. The record shows, however, that the citizens dismissed the bond validation appeal, electing only to pursue appellate review in their citizens'

---

[4] See id.
[5] Id. at 191.
[6] Id.
[7] Id.
[8] See id. at 192.
[9] Id.
[10] Id. at 190.

suit.[11] While that appeal was pending, the defendants finalized the transaction with The Woodlands Foundation and acquired the hospital facility.[12]

On appeal, this Court concluded that the Hospital Acquisition Act applied to the transaction.[13] The Court further found that, because the defendants had not complied with the Act's provisions, the acquisition was "null and void," and the case was remanded to the trial court for further proceedings.[14]

Following remand, the citizens moved to enjoin the defendants from issuing or selling the previously validated revenue bonds. By the time the citizens filed their motion, however, the bonds had been sold to Regions Investment Company, Inc. ("Regions Bank"). At a subsequent hearing, the citizens asked the trial court to enjoin the defendants from repaying any debt associated with the bonds.

The trial court denied the request for injunctive relief. It found that the citizens had not appealed the bond validation order, which was entered in a separate civil action, and such order was now binding:

> The issue of payment of the bonds is involved in Case Number 99-CV-243C, not in the [citizens' suit] considered by the Court of Appeals and which is the subject of this Order. The law of the case has determined that Rabun County and the Hospital Authority are liable on a [$4,500,000] revenue bond issue which requires the Authority to repay these bonds over a stated period of time, with Rabun County to levy taxes for the repayment of the bonds in the event revenues from the operation of the hospital are not sufficient to do so.

The trial court also determined that Regions Bank, the bond owner, was an indispensable party to any effort to enjoin bond repayment and ordered the citizens "to join Regions Bank as a party [d]efendant." The

---

[11] The citizens dismissed the bond validation appeal after the trial court directed them to file a surety bond pursuant to OCGA § 50-15-2. According to the citizens, they "could not afford the required bond and the attendant risk should their appeal fail." Apparently, the citizens did not appeal the trial court's decision imposing the surety bond. See OCGA § 50-15-2 ("In the event the [surety] bond is not filed by the . . . intervenors . . . within ten days after the order is entered, the . . . intervenors shall be dismissed by operation of law. . . . [The] intervenors . . . may appeal the order under the procedure provided by law in cases of injunction."); *Haney v. Dev. Auth. of Bremen*, 271 Ga. 403, 405 (1) (519 SE2d 665) (1999) ("If no bond is filed within ten days of an order, the . . . intervenor shall be dismissed by operation of law, but may appeal the order. The appellate courts have the authority to stay the lower court order, set the bond to be filed, modify the lower court order, or enter a final order.").

[12] *Turpen*, supra at 192.

[13] Id. at 196.

[14] Id. at 197 (5).

citizens appeal both rulings.

1. The citizens argue that because this Court previously declared the hospital acquisition "null and void," "Rabun County cannot be compelled to repay" the revenue bonds, which were validated to acquire the hospital facility. The citizens' failure to appeal the bond validation order, however, undermines their collateral attack on the bonds.

The Georgia Constitution requires the General Assembly to "provide for the validation of any revenue bonds authorized and [to] provide that such validation shall thereafter be incontestable and conclusive."[15] In accordance with this mandate, the General Assembly incorporated the following language into the Revenue Bond Law:[16]

> If no appeal is filed within the time prescribed by law or if an appeal is filed and the judgment is affirmed on appeal, the judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor.[17]

Our Supreme Court "has held consistently that this statutory provision prevents *any* collateral attack by the county, county residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene" or appeal.[18] Thus, a judgment validating revenue bonds or certificates "from which no timely appeal [is] filed, [is] conclusive on the question of the validity of the bonds and the security therefor."[19] Even if the judgment of validation is un-

---

[15] Ga. Const. of 1983, Art. IX, Sec. VI, Par. IV.

[16] OCGA § 36-82-60 et seq.

[17] OCGA § 36-82-78. See also OCGA § 31-7-81 (a) (indicating that revenue certificates issued by a hospital authority "shall be confirmed and validated in accordance with [the Revenue Bond Law]; and, when validated, the judgment of validation shall be final and conclusive with respect to such certificates and against the authority issuing the same").

[18] (Emphasis supplied.) *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773, 774 (1) (425 SE2d 637) (1993).

[19] (Punctuation and emphasis omitted.) Id. See also *Charlton Dev. Auth. v. Charlton County*, 253 Ga. 208, 209 (317 SE2d 204) (1984) (trial court erred in declaring tax levy agreement invalid based "upon considerations which could have been — and should have been — asserted and adjudicated during the bond validation proceedings"); *Cox v. Ga. Ed. Auth.*, 225 Ga. 542 (170 SE2d 240) (1969) (trial court properly dismissed complaint seeking to cancel sale of and enjoin payment under revenue bonds, which were validated in a separate proceeding affirmed on appeal); *Gibbs v. City of Social Circle*, 191 Ga. 422, 427 (2) (12 SE2d 335) (1940) ("[T]he legislature was perfectly justified in enacting the law which declares in effect that all parties who were entitled to a hearing in the validation proceeding on any question, including constitutional questions, who stood by refusing to urge the same, and permitted the court to proceed to judgment and the time for excepting thereto to expire, will not be permitted subsequently to present and have heard by the court complaints which he could have made in that proceeding.").

constitutional or arguably void, it cannot be collaterally attacked.[20] As the Supreme Court has noted,

> [t]his preclusion is necessary to protect the ability of governmental bodies to obtain long-term financing in the bond market. Potential purchasers would be reluctant to invest in the state's bonds without the assurance that the revenue bonds and their security are not subject to collateral attacks after a court with proper jurisdiction has entered a final validation order. Any perceived risk in the revenue bonds as an investment would impede the ability of state and local governments to finance needed public improvement projects.[21]

The record shows that the citizens intervened in the bond proceeding, but failed to challenge the validation order on appeal. That order became final and conclusive as to the validity of the bonds and the security pledged for bond payment.[22] The citizens cannot now challenge those bonds or enjoin repayment.[23]

We recognize that this decision produces an anomalous result, given the prior ruling that the hospital acquisition is null and void. Any other result, however, would place local financing in a precarious state. Like the trial court, we are constrained by the Georgia Constitution, statutory provisions governing bond validation, policy concerns, and the citizens' failure to appeal the bond validation order. Although the defendants did not follow the Hospital Acquisition Act, we cannot countenance the citizens' effort to attack the validity of the revenue bonds at this point. In so holding, we neither trivialize nor elevate the actions of the defendants. We elect *public* servants, not *perfect* servants.[24]

---

[20] See *Cox*, supra at 544 ("The order validating the bonds in the present case, affirmed by the Court of Appeals, was conclusive as to the validity of the bonds against the complainants herein, and the present action attacking the constitutionality of the issuance of the bonds cannot be maintained."); *Dawson v. Hosp. Auth. of City of Augusta*, 212 Ga. 146 (3) (91 SE2d 12) (1956) ("A judgment validating [hospital authority] revenue certificates, unless excepted to within the time provided by law, is conclusive upon all questions made, or that might have been made, prior to the judgment of validation, including the constitutionality of the statute under which the proceedings are had."); *Gibbs v. Ty Ty Consolidated School Dist.*, 168 Ga. 379, 381 (147 SE 764) (1929) ("[E]ven though the judgment of validation was void . . . , petitioners, who were citizens and taxpayers and could have intervened in the validation proceedings, were not entitled to an injunction to prevent the issuance and sale of the bonds.").

[21] *Ambac Indem. Corp.*, supra at 775 (1).

[22] OCGA § 36-82-78. As noted above, the bonds are secured by revenues from the facility, as well as payments by the County.

[23] See *Ambac Indem. Corp.*, supra ("Having chosen not to intervene and appeal the validation order, [the plaintiff] is precluded from a collateral attack on the security for the bonds.").

[24] It should be noted that the defendants and the trial court erroneously concluded that the Hospital Acquisition Act did not apply to the subject acquisition.

The citizens of Rabun County are to be commended for their remarkable vigilance. But the remarkable is not always the practicable. As the Supreme Court found in *Ambac Indem. Corp.*, bond validation must have finality in order for governmental entities within the state to procure financing. Accordingly, the trial court properly denied the citizens' motion to enjoin the defendants from making payments on the revenue bonds.

2. In the final paragraph of its order denying the citizens' motion, the trial court concluded that "Regions Bank, the present owner of the bonds, is an indispensable party to the present action to enjoin repayment of the bonds." It thus directed the citizens to join Regions Bank as a defendant "[b]efore proceeding further." The citizens enumerate this ruling as error.

In Division 1, we determined that the citizens could not enjoin repayment of the revenue bonds. As a matter of law, they cannot collaterally attack the validity of the bonds or any payments to Regions Bank under the bonds. The trial court's concern that Regions Bank be joined to protect its interest in bond repayment is now moot. We need not address, therefore, whether Regions Bank was an indispensable party to the citizens' effort to "enjoin repayment of the bonds."

*Judgment affirmed. Smith, P. J., and Ellington, J., concur. Johnson, P. J., disqualified.*

DECIDED AUGUST 17, 2001 —
RECONSIDERATION DENIED SEPTEMBER 12, 2001 —

*Meadows, Ichter & Trigg, Michael J. Bowers, Thomas J. R. Archer, Christopher S. Anulewicz, Stockton & Stockton, Lawrence A. Stockton, Jr.*, for appellants.

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John K. Larkins, Jr., Adams, Ellard & Frankum, Cadman R. Kiker, Jr., Charles L. Clay*, for appellees.