A05A2084. GREENE COUNTY BOARD OF COMMISSIONERS et al. v. HIGDON et al.
(626 SE2d 541)

MIKELL, Judge.

Harvey Higdon, Charles Bryant, Glenn Wright, Ben W. Boswell, Charles A. McKinley, and Samuel Atkins, Jr., (the "Taxpayers") filed a Complaint to Set Aside Hospital Service Assessment against the Greene County Board of Commissioners (the "Board"), its individual members in their official capacities, and the tax commissioner of Greene County. After a bench trial, the trial court entered an order setting aside the assessment, from which all defendants appeal. Based on the reasons outlined below, we reverse.

The facts in this case are not in dispute, as the parties stipulated thereto at the trial of this matter. Consequently, "this Court conducts a de novo review of the record in determining whether the trial court committed plain legal error."[1] On July 20, 2004, the Board approved Resolution No. 2004.7.20 (b) (the "Resolution"), which created, on that date, a Special Tax District consisting of all real property within the boundary of Greene County (the "District"). The District was created to allow the assessment of each parcel of real property in Greene County for the purpose of providing hospital-based care within the District. The assessment for 2004, made on June 1, 2004, was $100 per parcel of land in the county.[2]

On August 1, 2004, the Board entered into a contract with the Greene County Hospital Authority (the "Authority") to provide facilities to take care of indigent patients requiring medical attention and hospitalization (the "Contract"). The Authority issued Tax-Exempt

---

[1] (Citation omitted.) *Vesta Holdings I v. Tax Commr. of Fulton County*, 259 Ga. App. 717 (578 SE2d 293) (2003).

[2] The Taxpayers withdrew their argument that a referendum was required on the assessment.

Adjustable Mode Revenue Anticipation Certificates, Series 2004 (the "Bonds"), in an aggregate principal amount of $6,090,000. On August 3, 2004, the district attorney for the Ocmulgee Judicial Circuit filed the Petition and Complaint for Bond Validation (the "Bond Complaint"). The Bond Complaint provides: "The County intends to make the payments under the Contract from moneys received from an assessment (the 'Fee') that will be levied in a special taxing district (the 'Special District') created by the County pursuant to a resolution. The fee that will be levied in the Special District is $100 per tax parcel."

On August 23, 2004, the Superior Court of Greene County entered a Validation Order (the "Order"), which provided in pertinent part, that "the County has properly created the Special District referred to in the petition and complaint; the County is properly collecting the Fee referred to in the petition and complaint; and the County may use the Fee to pay its obligations under the Contract." None of the Taxpayers attempted to intervene in the bond validation matter or review the bond validation file prior to the entry of the Order. The parties also stipulated that even after the Order was entered, the Taxpayers reviewed the file but still did not attempt to intervene in the action. At trial, the court took judicial notice of the entire file of the bond validation proceedings.

After the presentation of the Taxpayers' case, the defendants moved for a directed verdict on the grounds that the doctrine of res judicata barred this action. The defendants argued that pursuant to OCGA § 36-82-78, a bond validation order cannot be collaterally attacked by the county, county residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene. The Commissioners also argued that the Taxpayers failed to present evidence in support of their claim that the assessment violated their rights to due process and equal protection. In response thereto, the Taxpayers stated that they were not contesting the issuance of the bonds, the contract between the county and the Hospital Authority, or the security given in connection therewith, which they contend was the county's ability to tax all property in the county up to a seven millage rate, not the hospital service assessment. Instead, they were arguing that the assessment was unconstitutional under the Georgia and United States Constitutions.

The trial court set aside the assessment, entering a lengthy order that outlined its findings of fact and conclusions of law. On appeal, the Commissioners argue that the trial court erred by substituting its opinion for that of the Board and by allowing the Taxpayers to collaterally attack the bond validation order. Additionally, in six separately enumerated errors, the Commissioners challenge several of the trial court's conclusions of law.

1. We agree with the Commissioners that the bond validation order cannot be collaterally attacked. "The State Constitution requires the General Assembly to provide for 'incontestable and conclusive' validation of revenue bonds. Ga. Const., Art. IX, Sec. VI, Par. IV (1983)."[3] Consequently, a judgment validating revenue bonds or certificates from which no timely appeal is filed, even if it is unconstitutional or void, is conclusive on the question of the validity of the bonds and the security therefor and cannot be collaterally attacked.[4] Having said all of the above, however, we conclude that the issue here is not whether the bonds or the security therefor can be contested, but the validity of the hospital service assessment.

2. Pursuant to the authority granted by Article IX, Section II, Paragraph VI of the Georgia Constitution, the legislature created within Georgia 159 special districts.[5] The Constitution provides:

> [S]pecial districts may be created for the provision of local government services within such districts; and fees, assessments, and taxes may be levied and collected within such districts to pay, wholly or partially, the cost of providing such services therein and to construct and maintain facilities therefor. Such special districts may be created and fees, assessments, or taxes may be levied and collected therein by . . . municipal or county ordinance or resolution.[6]

Moreover, Article IX, Section II, Paragraph III provides that in addition to and supplementary of all powers possessed by or conferred upon any county, the county may provide public health facilities and services, including hospitals.[7] It follows that the county was authorized to create the District for the purpose of providing health services.

The defendants enumerate as error the trial court's conclusion that the hospital service assessment was not authorized because it did not provide a benefit to each parcel of land owned by the Taxpayers. In reaching its conclusion, the trial court distinguished an assessment from a tax, finding that an assessment must provide a special benefit to the landowner apart from that derived by the

---

[3] *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773-774 (1) (425 SE2d 637) (1993). Accord *Quarterman v. Douglas County Bd. of Commrs.*, 278 Ga. 363 (602 SE2d 651) (2004).

[4] *Turpen v. Rabun County Bd. of Commrs.*, 251 Ga. App. 505, 508-509 (1) (554 SE2d 727) (2001). See also *Dawson v. Hosp. Auth. of Augusta*, 212 Ga. 146 (3) (91 SE2d 12) (1956); OCGA § 36-82-78.

[5] See OCGA § 48-13-50.1.

[6] Ga. Const. of 1983, Art. IX, Sec. II, Par. VI.

[7] Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (3).

general taxpayer. In the context of constitutionally authorized special districts and the powers provided to those special districts, however, we find the trial court's distinction inapposite.

The trial court erroneously relied on *City of Atlanta v. Hamlein*[8] as support for the proposition that the property owners must benefit from the assessment. In *Hamlein*, which involved a municipal corporation's decision to levy a local assessment for street improvements, the Supreme Court acknowledged the general rule that whether a lot owner benefitted was a question left to the discretion of the municipal authority, whose judgment thereon was conclusive except in the most extreme cases.[9] *Hamlein* was one of those extreme cases because the assessment exceeded the highest estimated value of the property at issue.[10] In this case, the trial court did not find facts that would render this an extreme case justifying a departure from the general rule. Accordingly, *Hamlein* does not support the invalidation of the hospital service assessment.

"[I]t is well established that a taxpayer has no valid equal protection or due process claim merely because he does not receive benefits of tax monies to the same extent as other citizens similarly taxed."[11] In *Speer v. Mayor &c. of Athens*,[12] the legislature passed an act that authorized the mayor and city council to improve sidewalks in the city of Athens and to assess and collect the cost therefor from the owners of real estate abutting the sidewalks. The landowners contended that the special benefit to the property owner was essential to the validity of the assessment.[13] The Court held that "it is clear that the whole question of benefit, whether general or special, is left to the legislative discretion, and, except in extraordinary cases, . . . is not a matter of enquiry for the courts."[14] Years later in *McLennan v. Aldredge*,[15] taxpayers residing in the city of Atlanta filed a class action to enjoin county officials from collecting a county school tax and to have the tax declared null and void because, among other things, the city taxpayers received no benefit from the county school tax. The Court again rejected this equal protection argument, stating that

---

[8] 96 Ga. 381 (23 SE 408) (1895).

[9] Id. at 383 (2).

[10] Id. at 384-385 (3).

[11] (Citation and punctuation omitted.) *Copeland v. State*, 268 Ga. 375, 378 (3) (490 SE2d 68) (1997).

[12] 85 Ga. 49 (11 SE 802) (1890).

[13] Id. at 55.

[14] Id. See also *City of Atlanta v. Johnson*, 191 Ga. 100, 102 (11 SE2d 656) (1940).

[15] 223 Ga. 879 (159 SE2d 682) (1968).

[t]he general rule is that [s]ince no system of taxation has yet been devised which will return to each taxpayer or class of taxpayers benefits in proportion to the payments made, the courts will not attempt to revise a necessarily complicated system of taxation to produce what might be thought to be a more just distribution of the burdens.[16]

In cases involving the creation of special districts, the general rule still applies. In *Youngblood v. State*,[17] which involved the creation of a special tax district to impose a hotel/motel tax, the tax protesters argued that due process and equal protection violations occurred because they were being taxed to provide a service that those outside of the special district, including the remainder of the county, would benefit from. The Supreme Court stated that "[t]he fact that others may consequently benefit without having paid any tax does not render the Act [that authorized the tax] violative of state and federal constitutional due process and equal protection guarantees."[18] Similarly, in *Bd. of Commrs. of Taylor County v. Cooper*,[19] which involved a special district sales tax, the Court found "no equal protection or due process violation on the basis that some areas of the district or some taxpayers in the district may receive a greater benefit than others[, stating] this is no doubt true of most if not all taxes."[20]

We find no reason to depart from the well-established rule in the instant case. As made clear above, the question of benefit is not a matter for the courts to decide, except in extraordinary cases.[21] As this is not an extraordinary case, and there is no evidence of abuse of legislative discretion, the trial court's order setting aside the assessment must be reversed with instructions to enter judgment for the defendants.

3. In light of Division 2, there is no need to address the defendants' remaining enumerations of error.

*Judgment reversed with instructions. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2006 —

*Mills & Moss, David C. Moss, Paul J. Dzikowski*, for appellants.

---

[16] (Citation and punctuation omitted.) Id. at 888 (5).
[17] 259 Ga. 864 (388 SE2d 671) (1990).
[18] Id. at 865-866 (2).
[19] 245 Ga. 251 (264 SE2d 193) (1980).
[20] (Citations omitted.) Id. at 256-257 (2).
[21] *Speer*, supra.

*McCamy, Phillips, Tuggle & Fordham, Charles L. Daniel III, H. Samuel Atkins, Jr., Jimmy D. Plunkett*, for appellees.