**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2017**

# In the Court of Appeals of Georgia

A16A1606. CLINTON v. THE STATE.

BRANCH, Judge.

On appeal from his conviction after a bench trial for habitually impaired driving and other crimes, Courtney Clinton argues that the evidence was insufficient as to the habitually impaired driving charge because he had not received sufficient notice of his status as a habitual violator. We agree and reverse.

Where, as here, the facts at a bench trial are not in dispute, "this Court conducts a de novo review of the record in determining whether the trial court committed plain legal error." *Greene County Bd. of Commissioners v. Higdon*, 277 Ga. App. 350, 350 (626 SE2d 541) (2006) (citation and punctuation omitted). This record shows that on February 24, 2014, Clinton was driving a vehicle in Richmond County when he was

stopped on suspicion of a window tint violation (OCGA § 40-8-73.1).[1] The window tint measured 21 percent light transmission, or eleven percent less than the statutory minimum. In addition to this window tint violation, Clinton was also charged with habitual impaired driving (OCGA § 40-5-58 (c) (2)), driving without registration (OCGA § 40-6-15), and driving without insurance (OCGA § 40-6-10).

At a bench trial, Clinton stipulated guilt as to the window tint, registration and insurance violations. Clinton also stipulated to the facts underlying the habitual impaired driving charge, including his driving under the influence (DUI) on February 18, 2011, March 8, 2012, and September 15, 2012. These facts included that on September 17, 2012, Clinton signed an "official notice of revocation/suspension"

---

[1] OCGA § 40-8-73.1 (b) provides in relevant part:

[I]t shall be unlawful for any person to operate a motor vehicle in this state: (1) Which has material and glazing applied or affixed to the front windshield, which material and glazing when so applied or affixed reduce light transmission through the windshield; or (2) Which has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent, or increase light reflectance to more than 20 percent.

2

advising him that his license was being revoked or suspended "upon conviction for" offenses including DUI and driving with a suspended license for a period "[to] be determined by [the Department] for the term authorized by law." The form did not indicate, however, that Clinton's license was being suspended because he was a habitual violator. The same form ordered Clinton to surrender his license, but Clinton had not brought it to court. On the same day, September 17, 2012, Clinton pled guilty to all three DUI charges. After the presentation of this stipulated evidence, Clinton argued that he was not guilty of the habitual impaired driving charge because he had not received notice of his status as a habitual violator. Although the State showed that the Georgia Department of Driver Services had attempted to notify Clinton of his status as a habitual violator in October 2012, Clinton produced a May 2014 letter from the Department showing that it had not so notified him.

After hearing argument from both sides, the trial court accepted Clinton's stipulation of guilt as to the first three counts and also found him guilty of being a habitual impaired driver. Because the trial court postponed sentencing in the case, this Court dismissed Clinton's first direct appeal on the ground that he had not followed the interlocutory appeal procedures of OCGA § 5-6-34 (b). On remand, the trial court entered a sentence of three years on probation.

3

On this appeal, Clinton argues that the evidence was insufficient as to his conviction as a habitual impaired driver because he was not given actual or legally sufficient notice of his status as a habitual violator. We agree.

The Supreme Court of Georgia has recently repeated the guidelines for examining the meaning of a statute, as follows:

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). Thus "if a statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." Id. at 173 (1) (a) (citation and punctuation omitted).

The statute governing habitual violators of Georgia's driving laws is OCGA § 40-5-58, which provides in relevant part:

> (a) As used in this Code section, *"habitual violator" means any person who has been arrested and convicted within the United States three or more times within a five-year period of time*, as measured from the dates

4

of previous arrests for which convictions were obtained to the date of the most recent arrest for which a conviction was obtained, of [offenses including DUI].

(b) *When the records of the department disclose that any person is a habitual violator* as defined in subsection (a) of this Code section, *the department shall forthwith notify such person that his or her driver's license has been revoked by operation of law and that it shall be unlawful for such habitual violator to operate a motor vehicle in this state unless otherwise provided in this Code section*. Notice shall be given by certified mail or statutory overnight delivery, with return receipt requested; or, in lieu thereof, notice may be given by personal service upon such person.

(c) (1) *Except as provided in paragraph (2) of this subsection . . .* , it shall be unlawful for any person to operate any motor vehicle in this state *after such person has received notice that his or her driver's license has been revoked* as provided in subsection (b) of this Code section, if such person has not thereafter obtained a valid driver's license. Any person *declared to be a habitual violator* and whose driver's license has been revoked under this Code section and who is *thereafter convicted of operating a motor vehicle* before the department has issued such person a driver's license or before the expiration of five years from such revocation, whichever occurs first, shall be punished by a fine of not less than $750.00 or by imprisonment in the penitentiary for not less than one nor more than five years, or both. Any person *declared to be a habitual violator* and whose driver's license has been revoked and *who is convicted of operating a motor vehicle* after the expiration

of five years from such revocation but before the department has issued such person a driver's license *shall be guilty of a misdemeanor*.

(2) *Any person declared to be a habitual violator as a result of three or more convictions of violations of Code Section 40-6-391*[, the DUI statute,] *within a five-year period of time*, as measured from the dates of previous arrests for which convictions were obtained to the date of the most recent arrest for which a conviction was obtained, *and who is thereafter convicted of operating a motor vehicle during such period of revocation, prior to the issuance of a probationary license under subsection (e) of this Code section or before the expiration of five years, shall be guilty of the felony of habitual impaired driving* and shall be punished by a fine of not less than $1,000.00 or by imprisonment in the penitentiary for not less than one nor more than five years, or both.

(Emphasis supplied.)

On their face, the three subsections of OCGA § 40-5-58 respectively (a) *define the category* of the "habitual violator," (b) *require notice* to such a person "that his or her driver's license has been revoked by operation of law," and (c) *set out the elements and penalties* for the offenses of misdemeanor and felony driving by "[a]ny person declared to be a habitual violator." Specifically, subsection (a) defines a "habitual violator" as "any person who has been arrested and convicted . . . three or more times within a five-year period" of traffic offenses including DUI. And subsection (b) mandates that when the Department's records "disclose that any person

6

is a habitual violator," the Department "*shall forthwith notify such person*" that his or her license has been revoked "by operation of law and that it shall be unlawful *for such habitual violator* to operate a motor vehicle" in Georgia. (Emphasis supplied.) Thus, as we noted in a case where the Department had provided a driver with notice of his habitual violator status, "the essence of the offense of driving while [an] habitual violator is driving after being notified that one may not do so." *Munna v. State*, 331 Ga. App. 410, 412 (1) (771 SE2d 106) (2015) (punctuation omitted).

As amended in 1992,[2] OCGA § 40-5-58 (c) established the new offense of felony "habitual impaired driving," with changes surviving into the present version of the statute, which provides that "[a]ny person declared to be a habitual violator" and "who is thereafter convicted of operating a motor vehicle" without permission or before five years have passed is guilty of either (1) the misdemeanor offense of driving as a habitual violator or (2), in the special case of "three or more" DUI convictions, "the felony of habitual impaired driving." The defined category of the "habitual violator," as well as the consequences flowing from the Department's declaration of a person as such, is thus the subject common to all three subsections of the statute. See. e.g,. *Smith v. State*, 248 Ga. 828, 830 (3) (286 SE2d 709) (1982)

[2] See 1992 Ga. L. p. 2556, § 1 (S. B. 487).

7

("The offense of violating [OCGA § 40-5-58] by driving a motor vehicle after revocation of a license upon being declared [an] habitual violator is an offense separate and distinct from the offenses which led to the driver's being declared [an] habitual violator").

The State seeks to avoid the plain terms of OCGA § 40-5-58 (b), which requires the Department to "notify" a habitual violator of his status as such, on the ground that Clinton acknowledged the suspension of his license. This argument ignores the statute's often-repeated distinction between license revocation, which occurs "by operation of law," and notice of a person's status as a "habitual violator," which notification enables the State to prosecute that person when later found to be driving a vehicle in Georgia. OCGA § 40-5-58 (b), (c). In sum, when a driver qualifies as a "habitual violator" under OCGA § 40-5-58 (a), the State must show that it provided notice to the driver of his status as such before it can obtain a conviction for either the misdemeanor of driving while a habitual violator or the felony of "habitual impaired driving." OCGA § 40-5-58 (c) (1), (2). Here, the State conceded that it failed to notify Clinton of his status as a "habitual violator" as required by OCGA § 40-5-58 (b). We must therefore reverse Clinton's conviction for the felony of "habitual impaired driving" as defined in OCGA § 40-5-58 (c) (2).

*Judgment reversed. Ellington, P. J., and Mercier, J., concur.*

8