44495. ALEXANDER v. MACON-BIBB COUNTY URBAN DEVELOPMENT AUTHORITY & URBAN PROPERTIES # 47 et al.
44525, 44526. ALEXANDER v. MACON-BIBB COUNTY URBAN DEVELOPMENT AUTHORITY et al. (two cases).

(357 SE2d 62)

GREGORY, Justice.

These three cases are appeals from the judgments of validation of certain revenue bonds issued to build a motel, a hotel, and a conference center in Bibb County. The appellant, Thomas Alexander, was permitted to intervene in the validation proceedings of each case. The cases were consolidated on appeal for review by this court.

*Case No. 44495*

The Development Authority of Bibb County (Authority) was created by resolution adopted in April 1973, by the Board of Commis-

sioners of Bibb County pursuant to the authority of 1976 Georgia Constitution, Art. IX, Sec. VIII, Par. II (1983 Georgia Constitution, Art. IX, Sec. VI, Par. III), and OCGA § 36-62-1 et seq., The Development Authorities Law. The stated purpose of the Authority is to promote the development of trade, commerce, industry and employment opportunities in Bibb County. In November 1985, after considering the application of appellee, Macon Ventures, the Authority adopted a preliminary resolution to issue four million dollars in revenue bonds for the construction of a "motel, convention and trade show facility," to be known as "Shoney's Inn." During the following year the Authority met with representatives of Macon Ventures to discuss the proposed project. On December 1, 1986, the Authority finalized the resolution to issue bonds for this project, and thereafter the State of Georgia initiated a bond validation proceeding in accordance with OCGA §§ 36-62-8 (g); 36-82-60 et seq. Appellant, a taxpayer, was permitted to intervene in this proceeding. OCGA § 36-82-77. The trial court entered judgment determining that all requirements of the Constitution and laws of Georgia relating to the issuance of the bonds had been met, and validating the bonds and security. The taxpayer filed this appeal enumerating five errors.

1. The appellant argues the project is not a "convention facility" within the meaning of OCGA § 36-62-2 (6) (H) (ii) and (vi). The appellant points out that the evidence shows the proposed project is for a 120-room motel with a meeting room which can accommodate 150 people. The appellant argues that as a matter of law a "meeting room" cannot transform a motel into a "convention facility."

The statute does not define "convention facilities." OCGA § 36-62-2 (6) (H) (ii). "In all interpretations of statutes, the ordinary significance shall be applied to all words. . . ." OCGA § 1-3-1 (b). We hold that the legislature intended for the word "convention" to be given its ordinary meaning which is, "a formal assembly or meeting of members, representatives or delegates of a group, such as a political party or fraternal society." The American Heritage Dictionary of the English Language, (1973). "Facilities" are "the means used to facilitate an action or process; convenience; [as] the facilities of a library. . . ." Id.

A "convention facility" is therefore a means used to facilitate the assembly of members of a particular group. The evidence supports a finding that the purpose of this project is to attract groups of up to 150 persons meeting for a particular purpose, by offering lodging and a meeting room which will accommodate the group. We hold that the project is a "convention facility" within the meaning of OCGA § 36-62-2 (6) (H) (ii) and (vi), and therefore is a permissible project under the Development Authorities Law.

2. OCGA § 36-62-9 provides, in part, "The purposes of [the De-

velopment Authorities Law] are to develop and promote trade, commerce and industry, and employment opportunities, for the public good and the general welfare, and to promote the general welfare of the state. No bonds . . . shall be issued by an authority under this chapter unless its board of directors adopts a resolution finding that the project for which such bonds . . . are to be issued will promote the foregoing objectives and will increase or maintain employment in the territorial area of such authority." The Authority here adopted such a resolution. The appellant challenged the sufficiency of this resolution at the validation proceeding, asserting that there was no evidence upon which the Authority could have based a determination that the project would further trade and commerce and maintain employment in Bibb County. At the validation hearing the appellant presented evidence, in the form of expert testimony and feasibility studies, tending to show that the project would impact negatively on these objectives. The Authority presented evidence, in the form of expert testimony and feasibility studies, tending to show that the project would further the stated objectives. The trial court concluded the project promoted the statutory objectives.

We hold that on appeal this court will not set aside a trial court's decision as to an issue of fact in a bond validation hearing if there is any evidence to support it. Because there is evidence to support the trial court's decision, we find no error.

3. Relying on *Miller v. State of Ga.*, 83 Ga. App. 135 (62 SE2d 921) (1951), appellant argues that the bonds should not have been validated because the resolution adopted by the Authority does not reasonably describe and define the proposed project. However, that case states "[it] is not absolutely necessary that an intricate and detailed set of plans be incorporated in the resolution but enough facts concerning the proposed project or improvement must appear to afford a key from which the full picture of the project or improvement may be ascertained, such as, for example, a reference to reasonably specific plans, maps and specifications or their equivalent." *Miller* at 141. We have studied the resolution in this case and find this requirement has been met. The fact that all final blueprints and specifications were not incorporated into the resolution does not require invalidation of the bonds.

4. OCGA § 36-82-75 requires the State to file a petition against the governmental body desiring to issue the bonds which states, inter alia, "the interest [the bonds] are to bear, how much principal and interest is to be paid annually . . . and the security to be pledged to the payment of the bonds." Appellant maintains that these technical requirements have not been complied with. Specifically, appellant argues that because the petition states the interest rate "will not exceed 10¾%," the amount of interest due and annual interest payments

cannot be calculated. There was testimony at the validation hearing that the interest rate will be set at the time of closing. Therefore the petition sets forth the interest rate with reasonable specificity under the circumstances. Appellant further argues that the petition does not clearly state the proposed security for the project. We agree with the trial court that the petition substantially complied[1] with the statutory requirements in these regards.

5. The appellant maintains the trial court erred in not granting his motions for discovery. However, the record shows that the Authority complied with appellant's every request for production of documents. The appellant contends the trial court erred in not continuing the validation proceedings so that he could depose the opposing parties. He states he was "entitled to discovery under the Civil Practice Act, which pursuant to Uniform Superior Court Rule 5, should be open for a period of six months after the filing of the answer." Uniform Superior Court Rule 5 provides, "In order for a party to utilize the court's compulsory process to compel discovery, any desired discovery procedures must first be commenced promptly, pursued diligently and *completed without unnecessary delay and within 6 months* after filing the answer unless for cause shown the time has been extended or shortened by court order." (Emphasis supplied.) This rule does not, as appellant suggests, require that he be given 6 months in which to complete discovery. We find no error.

## Cases Nos. 44525 and 44526

The Macon-Bibb County Urban Development Authority (Authority) was created by the General Assembly pursuant to certain constitutional amendments,[2] and local legislation.[3] One stated purpose of the Authority is to revitalize and redevelop the downtown areas of Bibb County, Ga. Laws 1974, pp. 3093, 3098; another stated purpose is to issue revenue bonds to construct buildings for use by any "industrial, commercial [or] business" enterprise upon a determination that the project will further the public good in Bibb County. Ga. Laws 1980, pp. 2128, 2130.

In April 1985, and in September 1986, the Authority adopted preliminary resolutions to issue bonds for the construction of a hotel

---

[1] *Lilly v. Crisp County School System*, 117 Ga. App. 868 (162 SE2d 456) (1968) is cited by appellant in support of his contention that the statutory requirements for the state's petition must be strictly construed. However, that case deals with the validation of bonds under the procedures set forth in OCGA § 36-82-20 et seq. The bonds in this case were validated under the procedures set forth in OCGA § 36-62-60 et seq. See OCGA § 36-62-8 (g).

[2] See Ga. Laws 1974, p. 1754 et seq.; Ga. Laws 1976, p. 1827 et seq.; Ga. Laws 1980, p. 2128 et seq.

[3] See Ga. Laws 1974, p. 3093 et seq. and Ga. Laws 1981, p. 4872 et seq.

and a conference center respectively, in an amount not to exceed ten million dollars for each project. Thereafter the Authority met with representatives of the projects to discuss their proposals, and on December 17, 1986, the Authority unanimously adopted the respective bond resolutions. In each instance the State of Georgia initiated the appropriate bond validation proceedings which were consolidated for consideration by the trial court. The appellant was permitted to intervene in these proceedings. OCGA § 36-82-77. The trial court entered judgment determining that all requirements of the Constitution and laws of Georgia relating to the issuance of the bonds had been complied with, and validating the bonds and security.

6. The appellant argues there was no evidence to support the trial court's findings that the projects would serve the public good. Rather, the appellant argues the projects will have a negative impact on trade, commerce and employment opportunities in Bibb County by increasing competition among area hotels in a market which, he maintains, is saturated. The evidence at the validation proceedings with regard to this issue was in conflict. However, expert testimony and a feasibility study were offered to show that both projects would promote business and increase employment opportunities in the Bibb County area. As there is evidence to support the trial court's findings, see Case No. 44495, Division 2, supra, we will not disturb them on appeal.

7. The appellant contends the bonds should not have been validated because the resolutions do not define the proposed projects with specificity. We do not agree. Our study of the bond resolutions demonstrates that the "facts concerning the proposed project . . . appear to afford a key from which the full picture of the project . . . may be ascertained. . . ." *Miller v. State of Ga.*, 83 Ga. App., supra at 141; see also Case No. 44495, Division 3, supra.

8. As he argued in Case No. 44495, appellant maintains that because the state's petition sets forth the interest rate as "not exceeding 16%," the interest rate is not "definitely calculable" and therefore the judgment of the trial court must be set aside. For the reasons stated in Division 4 of Case No. 44495, we do not agree. Nor are we persuaded that the security for the projects is not set forth with the required specificity. We find the trial court correctly determined that the petitions substantially comply with statutory requirements.

9. Appellant's complaint that he was denied discovery is identical to the issues decided adversely to him in Division 5 of Case No. 44495.

*Judgments affirmed. All the Justices concur.*

CLARKE, Presiding Justice, concurring.
I concur in all respects with the holding of the majority. I write only to comment upon Division 1 of Case No. 44495 which held that a

motel with a 150-seat meeting room falls within the category of a "convention facility." While it is true that this room could not accommodate the largest convention ever held in the United States, it is also true that it could have very comfortably accommodated the most important convention ever held on this continent — that being the Constitutional Convention of 1787. The Constitutional Convention had only 55 delegates and there was no meeting at which all were present, so it follows that the facility involved here could and may very well handle meetings with triple the number which ever attended the Philadelphia gathering of 200 years ago. There is little doubt however that the quality is unlikely to be equaled at this facility or any other.

With these thoughts in mind, I take this opportunity to encourage Georgians to celebrate and pay respect to the work done by the founding fathers on this the bicentennial year of the Constitution.

DECIDED JUNE 19, 1987.

*Chorey, Taylor & Feil, John L. Taylor, Jr., John L. Schaub, Harriet M. Deal,* for appellant.

*Willis B. Sparks III,* District Attorney, *Sell & Melton, Buckner F. Melton, Carl E. Lancaster, Jr., Thomas J. Ratcliffe, Jr.,* for appellees.