306 Ga. 375
FINAL COPY

S19A0378. DEVELOPMENT AUTHORITY OF COBB COUNTY
et al. v. STATE OF GEORGIA et al.

BLACKWELL, Justice.

The Development Authority of Cobb County resolved in May 2018 to issue $35 million in revenue bonds under OCGA § 36-62-2 (6) (N) to finance a retail development in east Cobb County. In particular, the Development Authority proposed to use the bonds to acquire land near the intersection of Powers Ferry Road and Terrell Mill Road and to construct a facility on that land that is suitable for the operation of a grocery store. The Development Authority then would lease the facility to the Kroger Company, which would relocate a nearby grocery store to the newly constructed facility.[1] Cobb County resident Larry Savage objected to the bonds,[2] and the

---

[1] According to the record, the new grocery store is a part of a proposed $120 million mixed-use development. It appears that the remainder of the mixed-use development is to be privately financed.

[2] See OCGA § 36-82-77 (a) ("Any citizen of this state who is a resident of the governmental body which desires to issue such bonds may become a party to the proceedings [concerning the validation of the bonds].").

Superior Court of Cobb County denied validation of the bonds, concluding that OCGA § 36-62-2 (6) (N) does not authorize the bonds and that subparagraph (6) (N) is unconstitutional in any event. The Development Authority and Kroger appeal, and for the reasons that follow, we reverse.

1. The superior court concluded that OCGA § 36-62-2 (6) (N) does not authorize the revenue bonds that the Development Authority has proposed to issue. Paragraph (6) identifies fifteen kinds of "projects" that development authorities can finance. Known as the "catchall provision" of paragraph (6), subparagraph (6) (N) authorizes development authorities to finance:

> The acquisition, construction, installation, modification, renovation, or rehabilitation of land, interests in land, buildings, structures, facilities, or other improvements and the acquisition, installation, modification, renovation, rehabilitation, or furnishing of fixtures, machinery, equipment, furniture, or other property of any nature whatsoever used on, in, or in connection with any such land, interest in land, building, structure, facility, or other improvement, all for the essential public purpose of the development of trade, commerce, industry, and employment opportunities. A project may be for any industrial, commercial, business, office, parking, public, or other use, provided that a

> majority of the members of the authority determines, by a duly adopted resolution, that the project and such use thereof would further the public purpose of this chapter.

OCGA § 36-62-2 (6) (N).

The superior court gave two reasons for its conclusion that subparagraph (6) (N) does not authorize the bonds in question. First, the superior court said that subparagraph (6) (N) authorizes a development authority to finance a project only to the extent that the project is "essential" to "the development of trade, commerce, industry, and employment opportunities." Although the superior court noted that Kroger expects to employ more persons at the new grocery store than at the existing grocery store nearby, the superior court reasoned that these additional employment opportunities were not enough to show that the new grocery store is "essential" to "the development of trade, commerce, industry, and employment opportunities." Second, the superior court said that the additional employment opportunities at the new grocery store in any event are not the sort of "employment opportunities" with which subparagraph (6) (N) is concerned, citing our decision in Haney v.

Dev. Auth. of Bremen, 271 Ga. 403 (519 SE2d 665) (1999). The superior court misunderstood both subparagraph (6) (N) and Haney.

Under subparagraph (6) (N), a project is eligible for public financing only to the extent that it promotes "the development of trade, commerce, industry, and employment opportunities." But nothing in subparagraph (6) (N) requires that an eligible project be "essential" to such development. To be sure, the word "essential" appears in subparagraph (6) (N), but it is used to describe the purposes for which a development authority may finance projects, not the projects themselves.[3] To say that "the development of trade, commerce, industry, and employment opportunities" is an "essential" purpose of development authorities is not to say that anything financed by a development authority must be "essential"

---

[3] The statutory pronouncement that "the development of trade, commerce, industry, and employment opportunities" are "essential public purpose[s]" follows the Development Authorities Clause of the Georgia Constitution, which says that "[t]he development of trade, commerce, industry, and employment opportunities [is] a public purpose vital to the welfare of the people of this state." Ga. Const. of 1983, Art. IX, Sec. VI, Par. III.

to such development.[4] See <u>Deal v. Coleman</u>, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (citation and punctuation omitted)). That a project may not be "essential" to "the development of trade, commerce, industry, and employment opportunities" does not render the project categorically ineligible for financing under subparagraph (6) (N), and the superior court erred when it concluded otherwise.

The superior court also erred when it relied on <u>Haney</u> to conclude that the additional employment opportunities at the new grocery store are not the sort of "employment opportunities" with which subparagraph (6) (N) is concerned. To begin, it is not entirely clear what principle the superior court gleaned from <u>Haney</u>; about <u>Haney</u>, the superior court simply said: "There is no evidence as described in [Haney] that this new Kroger furthers the essential

---

[4] As a further example of this truism, it is one thing to say that the national defense is an "essential" purpose of the national government; it is quite another to say that the deployment of a particular unit or the procurement of a particular weapons system is "essential" to the national defense.

public purpose of employment opportunities. In the Haney case[,] the fact that the proposed project would hire 25 new employees was not sufficient for it to be eligible for a [d]evelopment [a]uthority bond." But whatever the superior court understood Haney to mean, Haney is quite distinguishable from this case.

In Haney, we reversed the validation of bonds to finance the construction of a "public golf course . . . designed to fulfill the governmental function of providing recreational facilities and services to area residents." 271 Ga. at 408 (3). We said that the golf course at issue "[was] not a traditional business enterprise conducted for profit and thus d[id] not meet the definition of a trade, industry, or commerce." Id. Citing our earlier decision in Odom v. Union City Downtown Dev. Auth., 251 Ga. 248 (305 SE2d 110) (1983), we explained in Haney that the statutory reference to "employment opportunities" in subparagraph (6) (N) means "[employment] opportunities resulting directly from the trade, commerce, or industry that the [development] authority financed." 271 Ga. at 408 (3). Because the golf course was not "trade, industry,

or commerce," we reasoned, any jobs created by the operation of the golf course were not employment opportunities resulting from "trade, commerce, or industry," and any such jobs, therefore, were not "employment opportunities" of the sort contemplated by subparagraph (6) (N). See id.

Unlike Haney, this case concerns the development of a facility that clearly is intended for "trade" and "commerce." See Odom, 251 Ga. at 254 (2). The operation of a grocery store does not "fulfill a governmental function," and there is no serious contention that a Kroger grocery store is anything other than "a traditional business enterprise conducted for profit." Employment opportunities at the new grocery store are, therefore, "opportunities resulting directly from the trade, commerce, or industry" that the Development Authority proposes to finance, and they are "employment opportunities" within the meaning of subparagraph (6) (N). Haney is nothing like this case, and the superior court was wrong to conclude that the additional employment opportunities shown by the record in this case are not "employment opportunities" under

subparagraph (6) (N).

2. The superior court also concluded that OCGA § 36-62-2 (6) (N) is unconstitutional because it violates, the superior court said, the uniformity provision of the Development Authorities Clause of the Constitution.[5] In relevant part, the Development Authorities Clause provides:

> The development of trade, commerce, industry, and employment opportunities being a public purpose vital to the welfare of the people of this state, the General Assembly may create development authorities to promote and further such purposes or may authorize the creation of such an authority by any county or municipality or combination thereof under such uniform terms and conditions as it may deem necessary. . . .

Ga. Const. of 1983, Art. IX, Sec. VI, Par. III. The superior court understood the Development Authorities Clause to require that "the terms and conditions of the bonds [issued by development authorities] [must] be uniform." Because subparagraph (6) (N)

---

[5] Having concluded (albeit erroneously) that subparagraph (6) (N) does not authorize the bonds at issue here, the superior court never should have passed upon the constitutionality of subparagraph (6) (N). See Deal, 294 Ga. at 171 (1), n.7 (cautioning that trial courts generally ought to avoid constitutional questions when the resolution of non-constitutional questions is sufficient to decide a case).

purports to broadly authorize the financing of a wide variety of projects, the superior court reasoned, bonds issued under subparagraph (6) (N) inevitably will have varying terms and conditions, and the variability of those terms and conditions is inconsistent with the uniformity required under the Development Authorities Clause.

The superior court misunderstood the uniformity provision of the Development Authorities Clause. The plain terms of that provision require the creation of *development authorities* under "uniform terms and conditions." That provision simply says nothing at all about the uniformity of *bonds* issued by development authorities. See Ga. Motor Trucking Assn. v. Ga. Dept. of Revenue, 301 Ga. 354, 356 (2) (801 SE2d 9) (2017) ("[W]e afford the constitutional text its plain and ordinary meaning . . . and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." (citation and punctuation omitted)). That subparagraph (6) (N) may permit development authorities to issue bonds for different projects with different terms and conditions

does not render subparagraph (6) (N) unconstitutional. The superior court erred in concluding otherwise.

Judgment reversed. All the Justices concur, except Nahmias, P. J., disqualified, and Boggs, J., not participating.

Decided June 3, 2019 – Reconsideration denied July 1, 2019.

OCGA § 36-62-2 (6) (N); constitutional question. Cobb Superior Court. Before Judge Grubbs, Senior Judge.

Seyfarth Shaw, Kevin T. Brown, Rebecca A. Davis, Daniel M. McRae; King & Spalding, William A. Holby, Letitia A. McDonald, Gabriel Krimm, for appellants.

D. Victor Reynolds, District Attorney, for State of Georgia.

Larry Savage, pro se.