**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1484, A19A1507, A19A1508. LONG v. DEVELOPMENT
AUTHORITY OF FULTON COUNTY et al. (three cases).

MCFADDEN, Chief Judge.

These appeals challenge orders validating revenue bonds authorized for issuance by a county development authority. The appellant claims that the petitions for validation did not comply with a statutory requirement that the purpose of the bonds be set forth; but a review of the petitions reveals that they did in fact state the purpose of the bonds and thus complied with the statutory requirement. The appellant also claims that the court erred in validating the bonds under a statutory "catchall" provision defining such bond projects; but the various phases of the project meet the definition provided by that provision. The appellant further contends that the bond transaction improperly bound the county board of tax assessors to a certain valuation

of leasehold interests in the project assets; but the transaction merely provided a proper formula used by the board for such valuations. The appellant also claims that the court erred in refusing a continuance of the bond validation hearing; but there is no showing of an abuse of discretion by the court. Because the appellant has failed to show reversible error, we affirm.

1. *Facts and procedural posture.*

On November 13, 2018, the Development Authority of Fulton County adopted three resolutions authorizing the issuance of taxable revenue bonds for a project at Phipps Plaza in Atlanta in the principal amounts of $90,200,000 for the office portion of the project, $63,300,000 for the hotel portion, and $60,700,000 for the retail portion. The development authority sent notice of the bond resolutions to the Fulton County District Attorney, who subsequently filed petitions in superior court for validation of the bonds. On December 18, 2018, Erica Long moved to intervene and for a continuance of the bond validation hearing scheduled for December 27, 2018. The superior court granted Long's motion to intervene, but denied her motion for a continuance. After the December 27 evidentiary hearing, the court entered final orders validating the bonds for all three portions of the project.

Long appeals from the three final orders. Because the appeals raise the same issues, they are consolidated for our consideration.

2. *Purpose of the bonds.*

Long contends that the court erred in validating the bonds because the petitions filed by the district attorney failed to satisfy the statutory requirement of setting forth the purpose for which the bonds are to be issued. The contention is without merit.

OCGA § 36-82-75 provides, in part, that such a petition shall set forth "the name of the governmental body seeking to issue the bonds, the amount of bonds to be issued, [and] *for what purpose the bonds are to be issued. . . .*" (Emphasis supplied.) Here, each of the petitions stated that the bond proceeds "are to be used to acquire, construct and equip land, improvements and related building fixtures and building equipment (the "Project") in Fulton County, Georgia, to be leased to [the respective appellee company] for use as a mixed-use commercial facility and an economic development project under OCGA § 36-62-2 (6) (N)."

Long has cited no persuasive authority showing that this description of the purpose of the bonds was deficient and did not comply with OCGA § 36-82-75. On the contrary, "[w]e agree with the trial court that the petition[s] substantially complied with the statutory requirement[] in [this] regard[]." *Alexander v. Macon-Bibb County*

*Urban Dev. Auth.*, 257 Ga. 181, 184 (4) (357 SE2d 62) (1987) (footnote omitted) (involving other OCGA § 36-82-75 requirements about what must be set forth in bond validation petitions). See generally *Cottrell v. Atlanta Dev. Auth.*, 297 Ga. 1 (770 SE2d 616) (2015) (where purpose of bonds was to fund a portion of the cost of developing, constructing, and operating a new stadium facility in Atlanta); *Sherman v. Dev. Auth. of Fulton County*, 320 Ga. App. 689, 690 (740 SE2d 663) (2013) (noting that purpose of bonds was to finance the development of a manufacturing facility that would be leased to a certain company).

3. *OCGA § 36-62-2 (6) (N).*

Long contends that the trial court erred in validating the bonds pursuant to OCGA § 36-62-2 (6) (N), arguing that the definition of "projects" set forth in that code section does not apply to these cases. We disagree.

OCGA § 36-62-2 provides definitions of various terms for the chapter of the code governing Development Authorities Law. See OCGA § 36-62-1 *et seq*.

> Subsection (6) [of OCGA § 36-62-2] identifies fifteen kinds of "projects" that development authorities can finance. Known as the "catchall provision" of subsection (6), paragraph (6) (N) authorizes development authorities to finance: "The acquisition, construction, installation, modification, renovation, or rehabilitation of land, interests in land, buildings, structures, facilities, or other improvements and the acquisition, installation, modification, renovation, rehabilitation, or

4

furnishing of fixtures, machinery, equipment, furniture, or other property of any nature whatsoever used on, in, or in connection with any such land, interest in land, building, structure, facility, or other improvement, all for the essential public purpose of the development of trade, commerce, industry, and employment opportunities. A project may be for any industrial, commercial, business, office, parking, public, or other use, provided that a majority of the members of the authority determines, by a duly adopted resolution, that the project and such use thereof would further the public purpose of this chapter." OCGA § 36-62-2 (6) (N).

*Development Auth. of Cobb County v. State of Ga.*, ___ Ga. ___ (1) (829 SE2d 160) (2019). "Under paragraph (6) (N), a project is eligible for public financing only to the extent that it promotes 'the development of trade, commerce, industry, and employment opportunities.'" Id. at ___ (1).

Here, the trial court found in all three phases of the project – office, hotel, and retail – that the authority had determined the project will develop and promote trade, commerce, industry and employment opportunities for the public good and the general welfare of the state; that the authority had presented unrebutted testimony about such economic benefits of the project to the county and state; that issuance of the bonds to acquire, construct, and equip the project will be in the public interest; and that all phases thus qualify as projects within the meaning of OCGA § 36-62-2 (6) (N).

In challenging these findings in all three cases, Long argues that any intent to also use the bonds to realign streets, provide streetlights, rebuild a fire station, or build an emergency radio station are governmental projects that do not fall under the broad scope of paragraph (6) (N). She relies on *Odom v. Union City Downtown Dev. Auth.*, 251 Ga. 248 (305 SE2d 110) (1983) in support of this argument. *Odom*, however, is distinguishable from and does not control the instant cases. Rather, the instant cases are similar to *Nations v. Downtown Dev. Auth. of the City of Atlanta*, 255 Ga. 324 (338 SE2d 240) (1985).

As an initial matter, we note that both *Odom* and *Nations* did not involve paragraph (6) (N), although they addressed a similar statutory scheme for downtown development authorities. In distinguishing *Odom*, the Supreme Court in *Nations* explained:

> In *Odom*, the [development authority] sought to issue revenue bonds, the proceeds of which would finance the construction of a new city hall, renovate the existing police station and jail, and improve city streets. The project thus consisted of purely public elements. This court held that the scope of [that] project did not fall within the constitutionally designated purposes of Downtown Development Authorities which are the promotion and development of trade, commerce, industry, and employment opportunities. In the case before us[, however,] the project is comprised of both public and private components which are integrated so as to produce the desired purposes. The trial court found that the project will promote and develop the public purposes of trade,

6

commerce, industry, and employment opportunities. There is evidence in the record to support this determination.

*Nations*, supra at 331-332 (4) (citation and punctuation omitted).

As in *Nations*, the project in the instant cases does not consist of purely public elements, but is comprised of both private and public components. Moreover, the private components of the project greatly outweigh any public components, which would amount to only about $12 million of the more than $200 million total investment in the project. Since the public components are integrated into the larger private components of the project to produce the desired purposes, and the unrebutted evidence shows that the project will promote the development of trade, commerce, industry, and employment opportunities, the trial court did not err in finding that all three phases constitute a project within the meaning of OCGA § 36-62-2 (6) (N).

(a) *Hotel.*

In Case No. A19A1484, Long also argues that the hotel portion of the project should be evaluated under paragraph (6) (H) (vi) of OCGA § 36-62-2, not under paragraph (6) (N). Under paragraph (6) (H) (vi), projects include:

> The acquisition, construction, improvement, or modification of any property, real or personal, which shall be suitable for or used as or in connection with . . . [h]otel and motel facilities for lodging which also may provide meals, *provided that such facilities are constructed in*

7

*connection with and adjacent to convention, sports, or trade show facilities*. No project as defined by this division shall be exempt from any ad valorem taxation[.]

OCGA § 36-62-2 (6) (H) (vi) (emphasis supplied).

Contrary to Long's claim, there is no evidence that the hotel in this case will be constructed in connection with and adjacent to a convention facility.

> The statute does not define "convention facilities." In all interpretations of statutes, the ordinary significance shall be applied to all words. We hold that the legislature intended for the word "convention" to be given its ordinary meaning which is a formal assembly or meeting of members, representatives or delegates of a group, such as a political party or fraternal society. "Facilities" are the means used to facilitate an action or process; convenience; as the facilities of a library. A "convention facility" is therefore a means used to facilitate the assembly of members of a particular group.

*Alexander*, supra at 182 (1) (citations and punctuation omitted). Thus, in *Alexander*, a project for a 120-room motel with a meeting room which could accommodate 150 people was found to be a convention facility within the meaning of paragraph (6) (H) (vi) because the purpose of the project was "to attract groups of up to 150 persons meeting for a particular purpose, by offering lodging and a meeting room which will accommodate the group." Id.

But in the instant case, there is no evidence of a meeting room or any other convention facility being constructed with and adjacent to the proposed hotel. Rather,

8

the evidence shows that the adjacent space at issue is an outdoor area that will be free and open to the public, that will serve as a gathering space for the community, that can be rented for events in the evening, and that will help generate traffic at the mall. Because there is no evidence that the public outdoor space constitutes a convention facility or that the hotel is otherwise being constructed in connection with and adjacent to a convention facility, OCGA § 36-62-2 (6) (H) (vi) does not apply to the project.

(b) *Office.*

In Case No. A19A1507, Long further argues that the office portion of the project should be evaluated under paragraph (6) (J) of OCGA § 36-62-2, not under paragraph (6) (N). She argues that paragraph (6) (J) is a specific provision governing offices and that the development authority therefore may not pursue an office project under the more general paragraph (6) (N).

Pursuant to paragraph (6) (J), a project includes:

The acquisition, construction, leasing, or financing of: (i) An office building facility and related real and personal property for use by any business enterprise or charitable corporation, association, or similar entity which will further the development of trade, commerce, industry, or employment opportunities in this state and which shall be adjacent to or used in conjunction with any other existing or proposed project defined in this paragraph, which existing or proposed project is located

9

within the area of operation of the authority and which is used or intended to be used by such business enterprise or charitable corporation, association, or similar entity; or (ii) A separate office building facility and related real and personal property for use by any business enterprise or charitable corporation, association, or similar entity which will further the development of trade, commerce, industry, or employment opportunities in this state.

No such office building facility as defined in this subparagraph shall be undertaken by an authority unless the authority determines that the business enterprise or charitable corporation, association, or similar entity to use such facility will be the primary tenant[.]

OCGA § 36-62-2 (6) (J).

As set out above, the catchall provision of paragraph (6) (N) provides, in pertinent part, that a development authority project includes acquisition, construction, installation, modification, renovation, or rehabilitation of land, interests in land, buildings, structures, or facilities, and that such a project "*may be for any . . . office . . . or other use, provided that a majority of the members of the authority determines, by a duly adopted resolution, that the project and such use thereof would further the public purpose of this chapter.*" OCGA § 36-62-2 (6) (N) (emphasis supplied).

So while paragraph (6) (J) provides a more specific definition of "project" in that it is limited to addressing only office projects, paragraph (6) (N) also clearly authorizes office projects. In support of her argument that the more specific (6) (J)

10

must prevail, Long cites the principle of statutory construction that when "there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control[.]" *Montgomery County v. Hamilton*, 337 Ga. App. 500, 507 (1) (788 SE2d 89) (2016) (citation omitted). But that rule of statutory construction does not control because "in this particular case, [paragraph (6) (N)] expressly authorizes [office projects] that are similar to those enumerated in the preceding, more specific, [(6) (J)], which means there is no need to resort to this canon of statutory construction." Id. at 507-508 (1) (emphasis omitted). Instead,

> [i]t is an elementary rule of statutory construction that statutes relating to the same subject matter are in pari materia and must be construed together and harmonized whenever possible. And appellate courts must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless.

*Derby Props. v. Watson*, 346 Ga. App. 631, 634 (1) (816 SE2d 766) (2018) (citations and punctuation omitted).

If we were to adopt Long's construction of paragraphs (6) (J) and (6) (N), it would render meaningless the part of paragraph (6) (N) authorizing office projects. Rather than adopting such a construction, we must construe the paragraphs to give

11

effect to all their provisions. In doing so, we find that neither paragraph is the exclusive method for a development authority to pursue an office project; rather, a development authority has the power to proceed with an office project under either paragraph. Indeed, Development Authorities Law expressly provides that an "authority shall have all of the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter[.]" OCGA § 36-62-6 (a).

> In sum, under the plain language of [OCGA § 36-62-2, a development authority is] authorized by the statute's catchall provision [of paragraph (6) (N) to pursue an office project], but only if . . . it meets that subsection's requirement that [a majority of the members of the authority determines and adopts a resolution that the office project would further the public purpose of the law].

*Montgomery County*, supra at 507 (1). See generally *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (citation and punctuation omitted)). In the instant case, the development authority did just that, expressly determining and adopting a resolution that it was proceeding with the office project under paragraph (6) (N) and not under (6) (J); that the project would be for the public good and general welfare of the county and state; and that the project "will be in furtherance of the public purposes" as provided in the Development

12

Authorities Law. Because such a resolution was authorized by the plain language of OCGA § 36-62-2 (6) (N), the trial court did not err in validating the bonds pursuant to that code section.

(c) *Retail.*

In Case No. A19A1508, Long cites *Day v. Development Auth. of the City of Adel*, 248 Ga. 488 (284 SE2d 275) (1981) to make the additional argument that OCGA § 36-62-2 (6) (N) was not intended to encompass retail components of the project. However, *Day* was decided long before the catchall provision of paragraph (6) (N) was added to the statute in 1992 and *Day* addressed a different paragraph of an earlier version of the code in finding that a grocery store was not an industrial facility or plant. See OCGA § 36-62-2 (6) (A). *Day* therefore has no applicability to the instant case and provides no basis for reversing the trial court.

4. *Memoranda of agreement.*

Long complains that memoranda of agreement between the development authority, the Fulton County Board of Assessors, and the respective appellee companies improperly bind the board to value the companies' leasehold interests in the project assets at a certain amount or percentage. But Long misstates the

13

memoranda of agreement, which merely provide a formula utilized by the board for valuing the leasehold interests. As explained by the trial court:

> Nothing about this bond transaction dictates or affects the manner in which the [board] will value the assets that will be funded through the bonds transaction. The value of neither the fee simple interest of the [authority] nor the leasehold interest of the Company are established in advance; rather, on an annual basis, the [board] will appraise the value of the [authority's] fee simple interest in the subject property using all appropriate valuation methodologies just as it does when valuing any other similar property. The [memorandum of agreement] specifically provides that "[t]he determination of the fair market value of the Leasehold Interest in any asset in any year following the Tax Commencement Date (prior to being reduced by the applicable percentage) will be subject to periodic reassessment, for which the [board] will employ its standard valuation methods." In other words, and of critical importance, nothing whatsoever in this transaction affects the manner in which the fee simple value of the property at issue will be valued.

Moreover, contrary to Long's complaint, the leasehold valuation methodology used in these cases is authorized so long as it is not arbitrary or unreasonable, and Long has made no such showings. See *SJN Properties v. Fulton County Bd. of Assessors*, 296 Ga. 793, 797 (2) (770 SE2d 832) (2015) ("(T)he overriding issue in this case is whether the valuation method used by the defendants fairly and justly establishes the fair market value of a bond transaction leasehold estate such that the method is not arbitrary or unreasonable.") (citations and punctuation omitted);

14

*Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 91 (701 SE2d 472) (2010); *DeKalb County Bd. of Tax Assessors v. W. C. Harris & Co.*, 248 Ga. 277, 280-281 (3) (282 SE2d 880) (1981). See also OCGA § 36-80-16.1 (e). Accordingly, this enumeration of error is without merit.

5. *Continuance.*

Long claims that the trial court should have granted her motion for a continuance of the bond validation hearing to allow for discovery. But as the trial court found in denying the motion, Long did not allege that she had served any discovery and did not specify any matters that required discovery. "The trial court's discretion in granting or refusing a continuance will not be interfered with by the appellate courts unless it clearly appears that the judge abused his discretion." *Pointer v. Roberts*, 288 Ga. 150, 152 (702 SE2d 130) (2010) (citation and punctuation omitted). Because Long has failed to show that the trial judge abused his discretion, we will not interfere with the refusal of a continuance. See *Alexander*, supra at 184 (5) (finding no error in trial court's refusal to continue validation proceedings to allow for discovery).

*Judgments affirmed. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps, concur.*